

**ORDERED in the Southern District of Florida on June 13, 2014.**

**Erik P. Kimball, Judge**
**United States Bankruptcy Court**

---

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

In re:                                                   Case No. 13-23333-EPK
                                                         Chapter 7
BARRY BIONDO,

      Debtor.

_____/

THANH NGUYEN and
LUONG NGUYEN,

      Plaintiffs,

v.                                                       Adv. Proc. No. 13-01612-EPK

BARRY BIONDO,

      Defendant.

_____/

### <u>ORDER ON MOTIONS FOR SUMMARY JUDGMENT</u>

THIS MATTER came before the Court upon the *Plaintiffs', Thanh Nguyen and*

*Luong Nguyen, Motion for Summary Judgment and Incorporated Memorandum of Law*

[ECF No. 19] (the "Motion") filed by Thanh Nguyen and Luong Nguyen (the "Plaintiffs"), and the *Defendant's Cross Motion for Summary Judgment* [ECF No. 34] (the "Cross-Motion") filed by Barry Biondo, the debtor in the above-captioned chapter 7 case (the "Defendant").

The Defendant is obligated to the Plaintiffs under a judgment entered by the United States District Court for the Southern District of Florida (the "District Court") in Case No. 11-cv-81156-DMM. The Plaintiffs move for summary judgment on the sole count of their amended complaint requesting a determination that $1,130,742.68 of the $1,251,479.88 awarded by the District Court is not dischargeable under section 523(a)(6).[1] The Defendant also moves for summary judgment, arguing that he had just cause or excuse for his actions and so the Plaintiffs cannot prove that the Defendant acted with malice as required under section 523(a)(6).

The Court considered the Motion, the Cross-Motion, the *Amended Complaint to Determine Debt Non-Dischargeable Pursuant to 11 U.S.C. § 523* [ECF No. 15], the *Answer to Amended Complaint to Determine Debt Non-Dischargeable* [ECF No. 43], the *Defendant's Memorandum of Law in Opposition to Plaintiffs' Motion for Summary Judgment and in Support of [Defendant's] Cross-Motion for Summary Judgment* [ECF No. 34-1], the *Plaintiffs', Thanh Nguyen and Luong Nguyen, Reply to Defendant's Memorandum of Law in Opposition to Plaintiffs' Motion for Summary Judgment* [ECF No. 36], the *Plaintiffs' Response to Defendant's Cross-Motion for Summary Judgment* [ECF No. 57], the *Defendant's Reply to Plaintiffs' Response to Defendant's Cross-Motion for Summary Judgment* [ECF No. 60], the *Joint Stipulation of Facts Re Plaintiffs', Thanh Nguyen and Luong Nguyen, Motion for Summary Judgment and Incorporated Memorandum of Law*

---

[1] Unless otherwise noted, the words "section" or "sections" refer to provisions of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq*.

[ECF No. 33], the *Joint Stipulation of Facts Re Debtor's, Barry Biondo, Cross Motion for Summary Judgment* [ECF No. 56], and the materials filed therewith.

In light of the detailed findings of the District Court in awarding damages, fees and costs, and sanctions against the Defendant, which findings have preclusive effect here, and the lack of any admissible contradictory evidence offered by the Defendant, there is no genuine issue of material fact on most of the claims presented in this adversary proceeding. The sums owed by the Defendant to the Plaintiffs arising from Defendant's intentional trademark infringement and cybersquatting, the fees and costs awarded by the District Court that relate to such claims, and the District Court's award of sanctions, all arise from willful and malicious injury within the meaning of section 523(a)(6). As a result, the statutory damages awarded by the District Court for intentional infringement of trademark and cybersquatting, in the amount of $850,000.00, and the sanctions awarded by the District Court, in the amount of $27,700.00, in each case with post-judgment interest, will be excepted from discharge in this case. However, it is not clear from the District Court's order awarding fees and costs, nor can this Court determine based on the evidence before it on summary judgment, what part of the fees and costs award is attributable to prosecution of the claims of intentional infringement of trademark and cybersquatting. While the Court grants summary judgment on the Plaintiffs' right to have such claims excepted from discharge under section 523(a)(6), the Court cannot grant summary judgment as to the amount of fees and costs excepted from discharge. The only issue remaining for determination is the amount of fees and costs previously awarded by the District Court that will be excepted from discharge in this case.

I.      BACKGROUND

   A.      PROCEDURAL BACKGROUND

The Defendant filed a voluntary petition under chapter 13 of the United States Bankruptcy Code on June 4, 2013.  On June 18, 2013, the Defendant's bankruptcy case was converted from chapter 13 to chapter 7.

On August 15, 2013, the Plaintiffs initiated the above-captioned adversary proceeding by filing a complaint against the Defendant.  That complaint was dismissed and the Plaintiffs subsequently filed the Amended Complaint against the Defendant.  The Amended Complaint comprises a single count seeking a determination that certain sums awarded to the Plaintiffs in a final judgment entered by the District Court are not dischargeable under section 523(a)(6).

On November 4, 2013, the Plaintiffs filed the instant Motion.  The Plaintiffs argue that the Defendant is collaterally estopped from re-litigating the issues decided by the District Court.  The Plaintiffs argue that the findings of the District Court are dispositive here and that they are entitled to judgment as a matter of law because there are no genuine issues of material fact in this adversary proceeding.  On November 27, 2013, the Defendant filed the Cross-Motion.  The Defendant argues that summary judgment should be granted in his favor because the totality of the circumstances precludes a finding of no just cause or excuse, and so no malicious injury exists as required by section 523(a)(6).

   B.      FACTS

   1.      Prior to Suit in the District Court

The Plaintiffs own and operate hair and nail salons that serve alcohol to customers. In late 2006, the Plaintiffs began using the name "Tipsy" in operation of these salons. About a month after the Plaintiffs began using the Tipsy mark, the Plaintiffs opened a salon in Wellington, Florida.

4

Shortly thereafter, Plaintiff Mr. Nguyen filed an application with the United States Patent and Trademark Office to register the Tipsy mark. The United States granted his request, thereby giving him the right to use the Tipsy mark in connection with bar services. Plaintiff Mr. Nguyen also successfully registered the Tipsy mark with the State of Florida.

After filing the trademark application, but prior to receiving approval, the Plaintiffs sold the Defendant a 50% interest in the Wellington salon. Under their oral agreement, in addition to payment for a one-half interest in the salon, the Defendant agreed to pay a royalty fee for use of the Tipsy mark. Following this oral agreement, the relationship between the parties deteriorated, leading them to enter into a written agreement providing for the Defendant's purchase of the Plaintiffs' remaining interest in the Wellington salon. The written agreement permitted the Defendant to use the Tipsy mark for one year while he transitioned the salon to a new name. The Defendant agreed to cease using the Tipsy mark in all respects—including in connection with the salon's website—after the one-year period expired. The written agreement specifically provided that the Defendant was not purchasing the right to use the Tipsy mark or the name Tipsy and that all rights, marks, etc., associated with the name Tipsy were not part of the sale and would be retained by the Plaintiffs.

After the expiration of the one-year period, the Defendant continued to use the Tipsy mark and even tried to register a Tipsy mark of his own. He also failed to pay the majority of the purchase price agreed upon in the written contract. Consequently, the Plaintiffs initiated an action in the District Court against the Defendant and his business entity.

## 2.    The District Court Suit and Orders

In the District Court action, the Plaintiffs alleged nine claims against the Defendant sounding in trademark infringement under federal law and Florida common law, false

designation of origin, cybersquatting, unjust enrichment, breach of contract, and trademark dilution.  The Plaintiffs sought monetary and injunctive relief, attorneys' fees, and costs.

At the summary judgment stage, the District Court entered an order (the "Omnibus Order") granting summary judgment in favor of the Plaintiffs.[2]  In the Omnibus Order, the District Court found the Defendant liable for each claim before it other than unjust enrichment.  The District Court awarded $850,000.00 in statutory damages under the Lanham Act plus reasonable attorneys' fees and costs based on the Defendant's intentional trademark infringement and cybersquatting.  The District Court subsequently entered an order (the "Fees and Costs Order") granting the Plaintiffs $242,295.50 in attorneys' fees and $10,747.18 in costs.  Finally, as a result of the Defendant's knowing and willful violation of the Omnibus Order and a related injunction, the District Court entered an order directing the Defendant to pay a sanction to the Plaintiffs in the amount of $27,700.00 (the "Sanctions Order").  In the end, the District Court entered a final judgment awarding the Plaintiffs the aggregate sum of $1,251,479.88, consisting of $850,000.00 in statutory damages, $120,737.20 in contract damages, $242,295.50 in attorneys' fees, $10,747.18 in costs, and $27,700.00 in sanctions.[3]  The Plaintiffs request that this Court determine $1,130,742.68 of that amount, the entire judgment excluding the award of contract damages, is not dischargeable pursuant to section 523(a)(6).

One element of trademark infringement is that the alleged infringer's unauthorized use was likely to result in consumer confusion.  In this regard, the District Court employed a seven-factor test that included examining the Defendant's intent.  After finding the Defendant liable for trademark infringement, the District Court awarded $800,000.00 in

---

[2] The Eleventh Circuit Court of Appeals affirmed the District Court's grant of summary judgment in favor of the Plaintiffs.  *Nguyen v. Biondo*, 508 F. App'x 932 (11th Cir. 2013).

[3] Tipsy Spa and Salon, Inc., the Defendant's business, was also a named defendant in the District Court action.  The District Court's judgment is directed to both the Defendant and his business, and so the Defendant is personally liable for the entire judgment.

statutory damages in lieu of actual damages and permanently enjoined the Defendant from using the Tipsy mark.

In determining appropriate statutory damages, the District Court considered whether the Defendant's trademark infringement was willful, as courts may award greater statutory damages in cases of willful infringement. *See* 15 U.S.C. § 1117(c). "Willful infringement has been described as when the infringer acted with 'actual knowledge or reckless disregard for whether its conduct infringed upon the plaintiff's copyright.'" *Arista Records, Inc. v. Beker Enters., Inc.*, 298 F. Supp. 2d 1310, 1312 (S.D. Fla. 2003) (quoting *Original Appalachian Artworks, Inc. v. J.F. Reichert, Inc.*, 658 F. Supp. 458, 464 (E.D. Pa. 1987). While the "willful" standard under 15 U.S.C. § 1117(c) may be proven by showing the defendant was reckless with regard to infringement, in this case the District Court found that the Defendant knew of the Plaintiffs' rights in the Tipsy mark, knew that the Plaintiffs would be harmed by the Defendant's infringement, and intentionally infringed on the mark. Specifically, the District Court found that, in the agreement between the Defendant and the Plaintiffs, the Defendant acknowledged Plaintiff Mr. Nguyen's ownership of the Tispy mark and that the Defendant was only permitted to use the mark for one year. The District Court found that not only did the Defendant continue to use the Tipsy mark after one year, knowing that he had no right to do so and that the Plaintiffs would be harmed, but he impeded the Plaintiffs' litigation efforts at every turn during the District Court action. Indeed, both the District Court and the Eleventh Circuit characterized the Defendant as a contentious litigant who engaged in repeated misconduct.

On the claim of cybersquatting, the Plaintiffs were required to show that the Defendant registered or used a domain name involving the Tipsy mark with a bad faith intent to profit. In finding that the Defendant exhibited a bad faith intent to profit from his use of the name Tipsy in his salon's domain name, the District Court noted the Defendant's

ongoing willful, unauthorized use of the Tipsy mark, his attempt to register his own mark using the Tipsy name, and his failure to abide by the "express terms" of the agreement, which "explicitly precluded" him from using Tipsy as part of the salon's domain name after one year.  The District Court determined an award of $50,000.00 for cybersquatting to be reasonable based on the Defendant's "intentional infringement."  Viewing as a whole the District Court's findings relating to cybersquatting, the District Court determined that the Defendant knew he was not entitled to use the Tipsy name as part of the salon's domain name, knew that the Plaintiffs would be harmed by his use of the Tipsy name, and intentionally used the Tipsy name in his salon's domain name in violation of the parties' written agreement.

In the Omnibus Order, the District Court ruled that the Plaintiffs were entitled to reasonable fees and costs resulting from the Defendant's "intentional infringement" of the Tipsy mark.  In so ruling, the District Court relied on Eleventh Circuit precedent that fees and costs should be awarded only in cases where the infringement is malicious, fraudulent, deliberate, and willful—a standard that requires a showing of each of those factors.  Thus, consistent with existing law, in determining that fees and costs should be awarded the District Court found that the Defendant's infringement of the Tipsy mark was malicious and fraudulent and deliberate and willful.

The District Court did not set the amount of reasonable fees and costs in the Omnibus Order.  The District Court later entered its Fees and Costs Order, assessing reasonable costs at $10,747.18 and awarding attorneys' fees in the amount of $242,295.50. The Fees and Costs Order awards such amounts in connection with not just the intentional trademark infringement and cybersquatting claims, but also in connection with the Plaintiffs' breach of contract claim.  It is not clear from the text of the Fees and Costs Order, or from the other evidence before this Court on summary judgment, what portion of

the awarded fees and costs relates to the claims for infringement of trademark or cybersquatting as opposed to breach of contract.

In spite of the District Court's issuance of the Omnibus Order and a permanent injunction prohibiting the Defendant from using the Tipsy mark, his infringement continued.  As a result, the District Court issued an order to show cause, permitted the Defendant to respond (which he did), and held a hearing on his continued infringement.  In the subsequently issued Sanctions Order, the District Court found that the Defendant violated the District Court's injunction by continuing to use the Tipsy mark in connection with signage at his business location, a menu provided to customers at that location, and the business's website.  While the Defendant argued that a stay pending appeal excused his compliance with the Omnibus Order and injunction, the District Court rejected that argument, noting no motion for stay had even been filed.  The District Court found the Defendant knowingly violated the Omnibus Order, pointing to the Defendant's statement that "I am also aware that your decision is permanent and the fact that I filed an appeal does not give me the right to defy your orders."  The District Court found that the Defendant knowingly and intentionally violated the injunction, further harming the Plaintiffs, found that the Defendant failed to provide any reason to excuse his compliance with the Omnibus Order and injunction, and ordered the Defendant to pay the Plaintiffs $27,700.00 in sanctions.

It is telling to review the Omnibus Order, the Fees and Costs Order, and the Sanctions Order together.  The findings of the District Court, as a whole, show that the Defendant knew that the Plaintiffs owned the Tipsy mark, that the Defendant knew he did not have a right to continue to use the mark after the one year transfer period permitted in the parties' written agreement, that the Defendant knew that the Plaintiffs and their property (the mark itself) would be harmed if he continued to use the Tipsy mark in

violation of the written agreement, and that he intentionally continued to use the Tipsy

mark in spite of the agreement and even in spite of orders of the District Court directing

him not to use it.

## II.    SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a), made applicable to this matter by Federal

Rule of Bankruptcy Procedure 7056, provides that "[t]he court shall grant summary

judgment if the movant shows that there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also*

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 247-48 (1986). "An issue of fact is 'material' if it is a legal element of the claim under

the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson*

*Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). In considering a motion for summary

judgment, the Court must construe all facts and draw all reasonable inferences in the light

most favorable to the non-moving party. *Id.*

The moving party has the burden of establishing that there is an absence of any

genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party meets that

burden, the burden shifts to the non-movant, who must present specific facts showing that

there exists a genuine dispute of material fact. *Walker v. Darby*, 911 F.2d 1573, 1576 (11th

Cir. 1990) (citation omitted). "A mere 'scintilla' of evidence supporting the opposing party's

position will not suffice; there must be enough of a showing that the jury could reasonably

find for that party." *Id.* at 1577 (citing *Anderson*, 477 U.S. at 252).

## III.    COLLATERAL ESTOPPEL STANDARD

Collateral estoppel principles apply in discharge exception proceedings under section

523(a) of the Bankruptcy Code. *Grogan v. Garner*, 498 U.S. 279, 284 n.11 (1991). "A

bankruptcy court may rely on collateral estoppel to reach conclusions about certain facts, foreclose relitigation of those facts, and then consider those facts as 'evidence of nondischargeability.' " *Thomas v. Loveless (In re Thomas)*, 288 F. App'x 547, 548 (11th Cir. 2008) (citation omitted). "Collateral estoppel, or issue preclusion, bars relitigation of an issue previously decided in judicial or administrative proceedings if the party against whom the prior decision is asserted had a 'full and fair opportunity' to litigate that issue in an earlier case." *St. Laurent v. Ambrose (In re St. Laurent)*, 991 F.2d 672, 675 (11th Cir. 1993).

Because the judgment at issue in this case was rendered by a federal court, this Court must apply federal collateral estoppel law. *See CSX Transp., Inc. v. Bhd. of Maint. of Way Emps.*, 327 F.3d 1309, 1316 (11th Cir. 2003) ("[F]ederal preclusion principles apply to prior federal decisions, whether previously decided in diversity or federal question jurisdiction."). Under federal law, the application of collateral estoppel requires satisfying the following prerequisites:

> (1) the issue at stake must be identical to the one involved in the prior litigation; (2) the issue must have been actually litigated in the prior suit; (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that action; and (4) the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding.

*Id.* at 1317 (citation omitted). If all four requisites are satisfied, "estoppel operates to bar the introduction or argumentation of certain facts necessarily established in [the] prior proceeding." *Tampa Bay Water v. HDR Eng'g, Inc.*, 731 F.3d 1171, 1180 (11th Cir. 2013) (citation omitted).

## IV.    ANALYSIS

A discharge under section 727 "does not discharge an individual debtor from any debt . . . for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). There are two general components of this provision.

11

There must be a debt owing from the debtor to the plaintiff, and that debt must arise from willful and malicious injury.

Statutory damages, as opposed to actual damages, may constitute a debt for purposes of section 523(a)(6).  *See HER, Inc. v. Barlow (In re Barlow)*, 478 B.R. 320, 333 (Bankr. S.D. Ohio 2012) ("[D]espite the Plaintiffs' decision not to prove the extent of their actual damages, the statutory damages and attorneys' fees that the District Court awarded them constitute a debt for willful and malicious injury."); *Star's Edge, Inc. v. Braun (In re Braun)*, 327 B.R. 447, 450 (Bankr. N.D. Cal. 2005) ("Statutory damages for copyright infringement are also indicative of injury and, therefore, are nondischargeable in bankruptcy."); *see also Cohen v. de la Cruz*, 523 U.S. 213, 217-23 (1998) (holding certain damages including treble damages to be nondischargeable under section 523(a)(2)(A) when the damages resulted from fraud, false pretenses, or the like).

This Court has issued several decisions analyzing the "willful and malicious" standard in section 523(a)(6).  *See Stewart Tilghman Fox & Bianchi, P.A. v. Kane (In re Kane)*, 470 B.R. 902 (Bankr. S.D. Fla. 2012), *aff'd*, 485 B.R. 460 (S.D. Fla. 2013); *Drewes v. Levin (In re Levin)*, 434 B.R. 910 (Bankr. S.D. Fla. 2010).  The Court incorporates here the detailed discussion of the statutory phrase "willful and malicious" from the *Kane* decision. 470 B.R. at 939-43.  In short, an act is willful within the meaning of section 523(a)(6) if it is undertaken with the intent to cause injury, or if it is an intentional act and injury is certain or substantially certain to result.  With financial harms, such as those at issue in this case, it must be shown that the defendant actually knew, at the time of the intentional act, that injury was substantially certain to result.  An act is "malicious" within the meaning of section 523(a)(6) if it is wrongful and without just cause, or excessive even where there is no ill will.

12

Where a defendant intentionally infringes a trademark, as opposed to doing so merely recklessly, that act necessarily satisfies the willful standard under section 523(a)(6) and generally satisfies the malicious standard as well.[4]  The same is true for cybersquatting, except that cybersquatting always qualifies as malicious injury, as cybersquatting requires bad faith intent which "shall not be found in any case in which the court determines that the person believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful."  15 U.S.C. § 1125(d)(1)(B)(ii).

Intentional infringement of intellectual property rights and cybersquatting are inherently harmful activities—the intent to harm property of another is a necessary component of the claims themselves.[5]  The Ninth Circuit Bankruptcy Appellate Panel has determined intentional trademark infringement to be "tantamount to intentional injury under bankruptcy law," *In re Smith*, 2009 WL 7809005, at *9, stating that:

> Simply put, the intent to infringe and the intent to deprive the mark's owner of the value and benefit of his property are opposite sides of the same coin.  In other words, when someone intentionally infringes on the copyright or trademark of another, they subjectively desire to harm property belonging

---

[4] Intentional infringement of intellectual property is always wrongful, satisfying the first part of the malicious standard under section 523(a)(6).  With regard to the second requirement of the malicious standard, that the defendant's actions be without just cause, the Court is hard-pressed to imagine a situation in which one has just cause or excuse to engage in intentional infringement of intellectual property.  Even so, the Court recognizes that there may be some situation in which an intentional infringer acted with just cause. In light of the District Court's detailed findings, such is not the case here.

[5] *See Symantec Corp. v. Cristina (In re Cristina)*, Ch. 7 Case No. 07-18299-PGH, Adv. No. 08-01004-PGH, 2011 WL 766966, at *4 (Bankr. S.D. Fla. Feb. 24, 2011) (holding that one who intentionally infringes knows that injury is sure, or substantially certain, to result); *Smith v. Entrepreneur Media, Inc. (In re Smith)*, No. EC-009-1117-MkMoJu, 2009 WL 7809005, at *10 (B.A.P. 9th Cir. Dec. 17, 2009) ("[I]ntentional trademark infringement is a 'categorically harmful activity.' "); *Choice Hotels Int'l, Inc. v. Wright (In re Wright)*, 355 B.R. 192, 212 (Bankr. C.D. Cal. 2006) ("Because a finding of 'bad faith intent' is an essential element of an ACPA cause of action . . . cybersquatting in violation of the ACPA constitute[s] a categorically harmful activity which necessarily cause[s] injury . . . within the scope of § 523(a)(6)."); *In re Braun*, 327 B.R. at 451 ("[C]opyright infringement is a categorically harmful activity.").

> to the mark's owner—that is, they seek to deprive the mark's owner of the
> benefit and value of his or her property.

*Id.* at *10.  Intentional infringement does not have uncertain or variable outcomes—it

always results in harm.  *In re Braun*, 327 B.R. at 450.  The same is true with

cybersquatting.  *See Skydive Ariz., Inc. v. Butler (In re Butler)*, Ch. 7 Case No. 11-40930-

MGD, Adv. No. 11-4037-MGD, 2013 WL 5591922, at *4-5 (Bankr. N.D. Ga. Sept. 9, 2013);

*In re Barlow*, 478 B.R. at 334-35; *Panda Herbal Int'l, Inc. v. Luby (In re Luby)*, 438 B.R.

817, 838-40 (Bankr. E.D. Pa. 2010).  Thus, where a debtor has been held liable for

intentional infringement of intellectual property without just cause, or cybersquatting, the

resulting debt arises from a willful and malicious injury within the meaning of section

523(a)(6).

All components of the federal collateral estoppel standard are satisfied in this case.

In the Omnibus Order, the Fees and Costs Order, and the Sanctions Order, the District

Court addressed at length the intent of the Defendant in infringing the Plaintiffs' property

rights and the wrongfulness of the Defendant's actions.  While a claim for willful

infringement of trademark may be based on a reckless act, the District Court made detailed

findings that the Defendant acted with the intent to infringe the Plaintiff's property, that

the Defendant knew his acts would cause harm, and that there was no justification for the

Defendant's wrongful acts.  These are the same issues that the Plaintiffs must prove in this

action to satisfy section 523(a)(6).  The Defendant's intent and the wrongfulness of his

actions were actually litigated, repeatedly so.  Each of the findings made by the District

Court in the Omnibus Order, the Fees and Costs Order, and the Sanctions Order,

addressing the Defendant's intent and the wrongfulness of his actions, indeed his bad faith,

were critical and necessary to the District Court's rulings.  Lastly, the Defendant had

ample opportunity to litigate these issues before the District Court and to some extent the

Eleventh Circuit Court of Appeals. The question, then, is how much of the Plaintiffs'
present case is proven by giving collateral estoppel effect to the Omnibus Order, the Fees
and Costs Order, and the Sanctions Order.

In the Omnibus Order, the District Court conclusively determined that the
Defendant intentionally infringed upon the Plaintiffs' trademark, that he acted wrongfully,
and that he acted without just cause or excuse. The statutory damages awarded as a result
of the Plaintiffs' intentional infringement of trademark and cybersquatting, the sum of
$850,000.00, constitutes a debt resulting from willful and malicious injury to be excepted
from discharge under section 523(a)(6).

The Defendant claims that he believed his agreement with the Plaintiffs was void
and that his use of the Trademark was thus lawful. The District Court evaluated similar
allegations and rejected them.

The Defendant also claims that he acted with just cause or excuse because his
actions were based on advice of counsel. In general, reliance on advice of counsel is not a
defense to an action under section 523(a)(6). *Spring Works, Inc. v. Sarff (In re Sarff)*, 242
B.R. 620, 629 (B.A.P. 6th Cir. 2000) (citations omitted). This is particularly true in a case
such as this where the District Court made specific findings of intent to harm the Plaintiffs'
property and bad faith. *See Peabey Assocs., ACP v. Haisfield (In re Haisfield Enters. of
Fla.)*, 154 B.R. 803, 809 (Bankr. S.D. Fla. 1993) ("Where there are specific findings of
willful, bad faith conduct by the party, reliance on the advice of counsel as a defense to a §
523(a)(6) claim must fail.").

"Attorney's fees and costs constitute a debt under 11 U.S.C. § 523 when they 'result
from' the debtor's conduct underlying the debt." *Harry Bradford Barrett Residuary Trust v.
Barrett (In re Barrett)*, 410 B.R. 113, 123 (Bankr. S.D. Fla. 2009) (citing *Cohen*, 523 U.S.
213). "Therefore, when a debt is nondischargeable pursuant to 11 U.S.C. § 523(a), the

15

attorney's fees and costs associated with that debt are likewise nondischargeable." *Id.* at
124 (citing *K & K Ins. Grp., Inc. v. Houston (In re Houston)*, 305 B.R. 111, 116 (Bankr. M.D.
Fla. 2001)).

In the Omnibus Order, the District Court determined that the Plaintiffs are entitled
to fees and costs in connection with the Defendant's intentional infringement of trademark
and cybersquatting. The fees and costs incurred by the Plaintiffs in connection with those
claims are to be excepted from the Defendant's discharge under section 523(a)(6). However,
when the District Court actually assessed fees and costs in the Fees and Costs Order, it did
so not only in connection with claims that are to be excepted from discharge, those arising
from intentional infringement and cybersquatting, but also in connection with the
Plaintiffs' breach of contract claim. The District Court's award of fees and costs is a single,
aggregate award, for all fees and costs incurred in connection with the Plaintiffs' successful
claims. The District Court did not allocate its award of fees and costs so that one can
determine what portion of the award is attributable to the claims excepted from the
Defendant's discharge, nor does this Court have sufficient evidence at the summary
judgment stage to do so. So, while the Plaintiffs are entitled to summary judgment that the
fees and costs awarded by the District Court in connection with intentional infringement
and cybersquatting will be excepted from discharge, the Plaintiffs are not entitled to
summary judgment as to the amount of such fees and costs that are to be excepted from
discharge.

The $27,700.00 debt represented by the Sanctions Order is also not dischargeable in
the Defendant's bankruptcy case. The District Court imposed these sanctions based on the
Defendant's continued intentional and wrongful conduct without just cause or excuse.
Several courts have either held or intimated that a debt arising from a defendant's violation

of an injunction constitutes a non-dischargeable debt under section 523(a)(6).[6]  While circumstances may exist in which a defendant is found to have violated an injunction in a manner that is not willful or malicious, this is not such a case.  Here, the District Court found that the Defendant knowingly and intentionally violated the injunction entered by the District Court and that the Defendant did so without just cause.

## V.   CONCLUSION

The findings of the District Court in the Omnibus Order, the Fees and Costs Order, and the Sanctions Order, that the Defendant intentionally infringed the Plaintiffs' trademark and undertook cybersquatting, with full knowledge that such acts would harm the Plaintiffs' property, and without just cause or excuse, are entitled to collateral estoppel effect in this case.  The Plaintiffs are entitled to summary judgment that the following claims are excepted from discharge in this case pursuant to section 523(a)(6):  (a) statutory damages awarded by the District Court as a result of the Defendant's intentional infringement of the Plaintiffs' trademark and cybersquatting, in the amount of $850,000.00, plus post-judgment interest thereon; (b) sanctions in the amount of $27,700.00 as awarded by the District Court, plus post-judgment interest thereon; and (c) fees and costs awarded by the District Court in connection with claims of intentional infringement and cybersquatting, in an amount to be determined, plus post-judgment interest thereon.  The

---

[6] *See Liddell v. Peckham (In re Peckham)*, 442 B.R. 62, 78-83 (Bankr. D. Mass. 2010); *Buffalo Gyn Womenservices, Inc. v. Behn (In re Behn)*, 242 B.R. 229, 238 (Bankr. W.D.N.Y. 1999) ("[W]hen a court of the United States issues an injunction or other protective order telling a specific individual what actions will cross the line into injury to others, then damages resulting from an intentional violation of that order . . . are *ipso facto* the result of a 'willful and malicious injury.' "); *Louis Vuitton Malletier v. Ortiz (In re Ortiz)*, Ch. 7 Case No. 08-03055-GAC, Adv. No. 08-00123-GAC, 2009 WL 2912497, at *4 (Bankr. D.P.R. June 4, 2009); *Vuitton Et Fils, S.A. v. Klayminc (In re Klayminc)*, 37 B.R. 728, 730 (Bankr. S.D. Fla. 1984).  Conversely, courts' views differ over the nondischargeability of contempt order violations under section 523(a)(6).  *See Suarez v. Barrett (In re Suarez)*, 737-38 (B.A.P. 9th Cir. 2009); *In re Peckham*, 442 B.R. at 78-83.

only remaining issue to be determined in this case is the amount of fees and costs previously awarded by the District Court that are attributable to pursuit by the Plaintiffs of claims for intentional infringement of trademark and cybersquatting rather than breach of contract.

Accordingly, it is **ORDERED** that:

1.      The Motion [ECF No. 19] is GRANTED IN PART to the extent provided above.

2.      The Cross-Motion [ECF No. 34] is DENIED.

3.      The Court will issue final judgment following a determination of the amount of attorneys' fees and costs awarded by the District Court that should be excepted from discharge pursuant to 11 U.S.C. § 523(a)(6).

###

Copies furnished to:

Dawn Kelly, Esq.

*Dawn Kelly, Esq. is directed to serve a copy of this Order on all appropriate parties and to file a certificate of service with the Court.*